UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                              **REPORT AND**
                                                        **RECOMMENDATION**

v.
                                                        18-CR-00217(RJA)(JJM)

DORIAN KELLY,

                        Defendant.
_____

      Defendant Dorian Kelly is charged with being a felon in possession of a firearm,

in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). Indictment [6].[1] This charge arises from an

April 24, 2018 search warrant executed at the lower apartment of 215 Maple Street in Buffalo,

New York. Defendant and three other individuals were located in the residence at the time of the

search.

      Before the court is defendant's motion to preclude the statements he allegedly

made at that time, and to dismiss the Indictment based on alleged outrageous government

conduct [39]. I recommended the denial of that motion in oral rulings made on November 15,

2019, and advised the parties that I would later memorialize those rulings. *See* January 8, 2020

Text Order [52]. This Report and Recommendation explains my reasons for that

recommendation.

      Also before the court is defendant's motion to suppress his April 24, 2018

statements based on a violation of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436

(1966). Having reviewed the parties' post-hearing submissions [49, 50, 61, 62, 68-71] and

_____

[1]     Bracketed references are to CM/ECF docket entries. Unless otherwise indicated, page references
are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

heard oral argument on June 17, 2020 [72], for the following reasons, I recommend that the motion be granted.

## BACKGROUND

After defendant's arrest on April 24, 2018, he was prosecuted by the state, until being charged in this Court, initially by Criminal Complaint on October 24, 2018 [1], followed shortly thereafter by a November 1, 2018 Indictment [6]. It is undisputed that as part of its voluntary disclosures in this case, the government timely produced a New York State Criminal Procedure Law ("C.P.L.") §710.30 Notice[2] prepared by City of Buffalo Police Detective Jose Lorenzo that stated that no statements were made by defendant at the time of his arrest. [39-1], p. 1 of 42 (CM/ECF); [39], p. 1. In contradiction to the initial C.P.L. §710.30 Notice, the government's voluntary discovery included a May 7, 2018 e-mail from Assistant Erie County District Attorney ("ADA") Mara McCabe to First Deputy Erie County District Attorney Michael Keane, which stated that at the time of his arrest "defendant took ownership of everything found in the home (no 710.30 on this – just notes from the lower court ADA)". [39-1], p. 3 of 42 (CM/ECF).[3]

---

[2]       C.P.L. §710.30 provides, in relevant part, that "[w]henever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered" and "[s]uch notice must be served within fifteen days after arraignment and before trial".

[3]       In a subsequent September 20, 2018 e-mail from ADA McCabe to the United States Attorney's Office regarding this case, she stated that "[a]lthough [defendant] accepted responsibility for what was found in the home . . . . he was never specific as to what items he was taking responsibility for". [39-1], p. 2 of 42.

On May 13, 2019, defendant filed his initial pretrial motion, which I denied in a June 25, 2019 Decision and Order [23].   Among the issues that Decision and Order addressed was defendant's request for all Fed. R. Crim. P. ("Rule") 16 discovery, including statements. Based on the "government's representation that it 'properly complied with [that] obligation' and w[ould] promptly produce any additional statements it may become aware of", I denied that portion of the motion as moot. Decision and Order [23], p. 2.

Defendant appealed portions of my Decision and Order, but not my decision to deny his motion for production of statements [28].[4] In connection with that appeal, the government's response quoted defendant stating, at the time of his arrest, "'I'll take it. Everything in the house is mine'". Government's Response [30], p. 3. Since defendant's counsel was unable to locate the alleged statement contained in the discovery, the issue was raised before Judge Arcara at the August 21, 2019 oral argument of the appeal, and the government committed at that time to re-providing the discovery. *See* August 21, 2019 Minute Entry; Bagley Affirmation [33], p. 4. When that did not occur, defendant filed a motion to compel the production of his statements, which contrary to the government's representations, his counsel had been unable to locate in the government's voluntary discovery. *See* Bagley Affirmation [33], pp. 4-5.

In response, the government noted that defendant's statement was referenced in ADA McCabe's e-mail, which had been produced on November 28, 2018. Government's Response [35], p. 10 of 11 (CM/ECF). It further explained that

> "[b]ased on the discrepancies in the defendant's Buffalo Police Department charging paperwork stating that no statements w[ere] made by the defendant, the government requested that [City of Buffalo Police Lieutenant Christopher Kochersberger,] the Buffalo Police Officer who the statements were made [,] to

---

[4]      The appeal remains outstanding.

draft a statement indicating what statements were made by the defendant. In the meantime, the government has verbally informed defense counsel on multiple occasion[s] that the defendant[ ] took ownership of the items found inside of 215 Maple Street . . . and explained that the discrepancies in the paperwork that no statements were made by the defendant was due to the fact that [Lieutenant Kochersberger] was not the arresting officer who drafted the arrest paperwork . . . . The government has since provided a subsequent 710.30 statement notice drafted by BPD Lt. Kochersberger to defense, which merely reiterates the information previously provided to the defense on numerous occasions." Id., pp. 10-11.

The second C.P.L. §710.30 Notice states that "[a]fter arrest and rights by LT C. Kochersberger the defendant spontaneously stated when told he and others in the house woould [*sic*] be arrested for guns and drugs, 'I'll take it, everything in the house is mine'". Gov. Ex. 4 [61-4]. According to defendant, the government first produced that notice on October 25, 2019. [39], p. 2. Shortly after its production, defendant moved on November 8, 2019 to preclude the statement based on its belated disclosure, and for dismissal of the Indictment on the grounds of outrageous government conduct. Id., pp. 1-6.

In oral rulings, I denied that motion, but permitted defendant the opportunity to seek suppression of the statement on other grounds. Consistent with that ruling, defendant moved to suppress the statement [49], alleging that it was made without the benefit of Miranda warnings. A hearing concerning that issue was conducted before me on February 13, 2020 at which Lieutenant Kochersberger and Detective Jose Lorenzo testified for the government and Yilliam Galindez and Amber Fernandez - two of the other occupants of the residence at the time of the search - testified for the defense.

### HEARING TESTIMONY

Lieutenant Kochersberger testified that he advised defendant of his Miranda rights without the use of a Miranda card, while defendant was seated and handcuffed at the dining

room table of 215 Maple Street. Evidentiary hearing transcript [62], pp. 9-12, 16, 18, 49; gov. ex. 5 [61-5]. Detective Lorenzo, who was present in the dining room, testified that he observed Lieutenant Kochersberger administer <u>Miranda</u> rights to defendant, as well as the other occupants of the residence. <u>Id.</u>, pp. 75-76. Defendant appeared alert and responded that he understood his rights. <u>Id.</u>, pp. 10, 12-13. Lieutenant Kochersberger denied making any threats or promises to defendant. <u>Id.</u>, p. 14.

After Lieutenant Kochersberger advised defendant of his <u>Miranda</u> rights, he informed defendant and the other three occupants of the residence, who were located in the adjacent living room approximately eight feet from the dining room table, that they were going to be arrested for the guns and drugs recovered from the house. <u>Id.</u>, pp. 20-21, 23-24, 77. According to Lieutenant Kochersberger, defendant responded "I'll take it. Everything in the house is mine", which is reflected in the second C.P.L. §710.30 Notice. <u>Id.</u>, pp. 20-23; gov. ex. 4 [61-4]. Detective Lorenzo was in the vicinity of defendant seated at the dining table in the process of writing down the arrest information when that statement was made. <u>Id.</u>, pp. 78, 129.

As the arresting officer, Detective Lorenzo's responsibilities included memorializing defendant's statements in a C.P.L. §710.30 Notice. <u>Id.</u>, pp. 25-26, 57, 59-60, 62, 78-80. Lieutenant Kochersberger was not present when Detective Lorenzo booked defendant or prepared the initial C.P.L. §710.30 Notice. <u>Id.</u>, pp. 26, 60. Although Detective Lorenzo was present when defendant made the statement, he indicated in the initial C.P.L. §710.30 Notice that no statements were made (gov. ex. 2 [61-2]), because "the statements weren't made to me directly . . . . It is the responsibility of the individual officers that the statements were made to inform the arresting officer whether or not they want to introduce them at the time of arrest". [62], p. 84. He testified that since Lieutenant Kochersberger did not direct him to include

defendant's statements, they were not memorialized on the initial C.P.L. §710.30 Notice. Id., pp. 84-85, 114-15, 128. By contrast, Lieutenant Kochersberger testified that he directed Detective Lorenzo to memorialize defendant's statements in the C.P.L. §710.30 Notice. Id., pp. 50-51, 62-63, 74.

Detective Lorenzo also did not memorialize defendant's statement on the arrest paperwork. Id., pp. 109, 111-12. See Arrest Data Report (defendant's Ex. C [61-8]); Central Booking Bureau Case History (defendant's Ex. D [61-9]); and Arrest Data Form (defendant's Ex. E [61-10]). According to him, the C.P.L. §710.30 Notice was the designated form to record defendant's statements. Id., p. 126. Detective Lorenzo also did not take any personal notes on the day of the arrest. Id., p. 90. Likewise, Lieutenant Kochersberger did not take any notes during the arrest or at any point in the case. Id., pp. 27, 40-44.

Although Lieutenant Kochersberger remembered discussing defendant's statement with Assistant United States Attorney ("AUSA") Emmanuel Ulubiyo on March 11, 2019, he did not recall when AUSA Ulubiyo asked him to memorialize the statement or the mechanism that was used to prepare the second C.P.L. §710.30 Notice. Id., pp. 22, 55-57. Lieutenant Kochersberger did not recall creating the second C.P.L. §710.30 Notice, which are generally typed by the report technician, but conceded that it contained his words. Id., pp. 38-39, 65-68, 79. Detective Lorenzo denied preparing the second C.P.L. §710.30 Notice. Id., p. 86.

Lieutenant Kochersberger acknowledged that C.P.L. §710.30 Notices are important and that he never had another case where a C.P.L. §710.30 Notice was prepared a year or more after the statement was made. Id., pp. 36-37, 44. Lieutenant Kochersberger conceded that, in the typical case, the C.P.L. §710.30 Notice is produced at the defendant's arraignment or shortly thereafter. Id., p. 47.

Following defendant's arrest, Detective Lorenzo, as the arresting officer, would have discussed the case with the ADA handling the state prosecution that preceded the federal case, and would have also provided the ADA with a copy of his case file. Id., pp. 91-92. Detective Lorenzo testified that he would have informed the Assistant District Attorney that a statement was made, even if it was not included on the C.P.L. §710.30 Notice. Id., pp. 121-22.

In contrast to the version of events presented by Lieutenant Kochersberger and Detective Lorenzo, Mss. Galindez and Fernandes testified that the officers did not read any of the occupants their Miranda rights. Id., pp. 139, 169-70. They testified that after the officers recovered a firearm, they collectively asked all of the occupants which of them lived there, and defendant responded that he was babysitting the house. Id., pp. 138-39, 166-67, 189-91. Ms. Fernandes never heard defendant say "I'll take it. Everything in the house is mine". Id., p. 168.

Defendant was initially seated in the living room with Mss. Galindez and Fernandes, before being taken into the dining room. Id., pp 154, 159, 175-76. Mss. Galindez and Fernandes conceded that while seated in the living room, they could not hear what was being said between defendant and the officers in the dining room, and did not know if defendant was read his Miranda rights at that time. Id., pp. 154-55, 176, 178-79, 181-82.

Mss. Galindez and Fernandes were invited to 215 Maple Street by Timothy Jones, the fourth occupant at the time of the search. Id., pp. 136, 162. Neither knew defendant before the incident and have not been in contact with him since that day. Id., p. 136, 165-66.

## DISCUSSION

### A.      Defendant's Motion to Preclude and Dismiss the Indictment

Defendant seeks preclusion of the statement contained in the second C.P.L. §710.30 Notice based upon its belated production. [39], pp. 2-4.  He also seeks "dismissal of the [I]ndictment, or at least suppression" of that statement, arguing that "the government has created new evidence 18 months into the case". Id., p. 4.  He characterizes the statement as, "at best", being "inherently unreliable and the product of undue suggestion by the prosecutor", and, "[a]t worst", being "created or exaggerated beyond all recognition". Id.

I find no basis for either form of relief.  At the November 15, 2019 proceeding, AUSA Ulubiyo represented that the second C.P.L. §710.30 Notice was prepared at his request on or about March 11, 2019, and that he believed that he thereafter produced it to defendant. Although better communication with defendant's counsel may have avoided the confusion that arose, I have no reason to question Mr. Ulubiyo's representations as an officer of the court.  *See* United States v. Butler, 2017 WL 4324684, *2 (W.D.N.Y. 2017) ("[b]ecause attorneys are officers of the court, a judge may rely on an attorney's representations"); United States v. Johns, 336 F. Supp.2d 411, 424 (M.D. Pa. 2004) ("[t]he court is entitled to rely on the representations of counsel, as officers of the court").  Nor does defendant offer any authority that suppression would be warranted for a violation of C.P.L. §710.30, which required production of the statement within fifteen days of the arraignment. *See generally* United States v. Fountaine, 2008 WL 4239950, *1 n. 1 (W.D.N.Y. 2008) (the failure to comply with C.P.L. §690.36(3) "regarding the process to be used in dealing with a warrant application does not, by itself, require the suppression of evidence obtained as a result of the execution of the search warrant").

Even without the production of the second C.P.L. §710.30 Notice, defendant was aware of the substance of the statement from ADA McCabe's e-mail that was produced during discovery, and had the basis to seek suppression of it, as he has since done, on Miranda grounds. Government's Response [43], p. 2 of 8 (CM/ECF).  While the statement reflected in the second C.P.L. §710.30 Notice is more precise than what was formerly disclosed, defendant's counsel was at least aware of a potentially inculpatory statement, and had the means to investigate and seek suppression of it. *See* United States v. Almohandis, 307 F. Supp. 2d 253, 255 (D. Mass. 2004) ("[r]egardless of whether or not the agent ever reduces the oral statement to writing, the government must disclose the 'substance' of the oral statement to the defendant if it intends to use the oral statement at trial"). Therefore, I find no basis for preclusion or dismissal.

**B.     Defendant's Motion to Suppress Statements**

Defendant alleges that he was subjected to a custodial interrogation in the absence of Miranda warnings. Kelly Affidavit [49-1], pp. 3-4 of 4 (CM/ECF).[5]  Therefore, "the burden shifts to the government to prove Miranda voluntariness, either because there was no custodial interrogation implicating Miranda, there was some exception to the Miranda rule, or because [defendant] was properly Mirandized and waived his rights". United States v. Miller, 382 F. Supp. 2d 350, 362 (N.D.N.Y. 2005).  The government must meet its burden by a preponderance of the evidence. *See* id. at 361; United States v. Male Juvenile, 121 F.3d 34, 39 (2d Cir.1997) (the government bears the burden of proving the defendant's "knowing and voluntary waiver of his Miranda rights . . . . by a preponderance of the evidence").

---

[5]     While asserting the lack of Miranda warnings, he has not alleged that his statements were otherwise involuntary.

The government argues that the evidence adduced at the hearing establishes that defendant was read his Miranda rights, waived those rights, and thereafter made voluntary statements to law enforcement.  Government's Post-Hearing Memorandum of Law [68], pp. 6-11.  Alternatively, the government argues that even in the absence of Miranda warnings, defendant's statement came in response to a pedigree question, rather than interrogation. Id., pp. 4-6.

As counsel for both parties recognized at the June 17, 2020 oral argument, the determination of whether the government has met its burden of establishing by a preponderance of the evidence that defendant received Miranda warnings (or that some exception to the Miranda requirement existed) turns on my assessment of the credibility of the witnesses who testified.  *See* Krist v. Kolombos Rest. Inc., 688 F.3d 89, 95 (2d Cir. 2012) ("[i]t is within the province of the district court as the trier of fact to decide whose testimony should be credited . . . . And as trier of fact, the judge is 'entitled, just as a jury would be . . . to believe some parts and disbelieve other parts of the testimony of any given witness'").   An adverse credibility determination is "appropriately based upon inconsistent statements, contradictory evidence, and inherently improbable testimony". Diallo v. I.N.S., 232 F.3d 279, 287-88 (2d Cir. 2000).  "While police officers are certainly deserving of respect, 'they should be treated like any other witness that took the stand. You don't accept their testimony because they're police officers and you shouldn't reject their testimony because they're police officers.'" United States v. Lawson, 961 F. Supp. 2d 496, 504 (W.D.N.Y. 2013).

Having personally observed witnesses' testimony, several factors demonstrate that the government's witnesses were not entirely credible.  Most notably, there is contradictory evidence as to whether defendant made any statements at the time of his arrest.  Although both

Lieutenant Kochersberger and Detective Lorenzo testified that defendant admitting to possession of the contraband located in the residence, the initial C.P.L. §710.30 Notice - the only contemporaneous record of defendant's statements - indicates that *no* statements were made.

The government fails to offer a consistent explanation for that discrepancy. Whereas Lieutenant Kochersberger testified that he directed Detective Lorenzo to memorialize the statement, Detective Lorenzo testified that Lieutenant Kochersberger did not direct him to do so. The government's characterization of this as a "miscommunication" between Lieutenant Kochersberger and Detective Lorenzo (government's Post-Hearing Memorandum of Law [68], p. 3) does not hold water.  That explanation directly conflicts with AUSA Ulubiyo's earlier representation at the November 15, 2019 proceeding that he had been informed by Detective Lorenzo that he had "made a mistake in clicking the wrong box" on the initial C.P.L. §710.30 Notice.[6]

In any event, even if Detective Lorenzo had received no direction from Lieutenant Kochersberger to memorialize the statement, given the statement's significance (*i.e.*, a confession), it is improbable that he would not have sought clarification from Lieutenant Kochersberger or memorialized the statement (and the fact that it was preceded by a Miranda waiver) in the arrest paperwork or elsewhere.  Without some contemporaneous memorialization of the statement and the Miranda waiver, it is difficult to believe that Lieutenant Kochersberger, who estimated that he had participated in 5,000 arrests ([62], p. 12), and Detective Lorenzo, who acknowledged that he prepared thousands of C.P.L. §710.30 Notices (id., pp. 46-47), can so clearly recollect the events of the arrest that occurred nearly two years earlier.

---

[6]     The quote is from an unofficial chambers transcription of the digital audio recording from that proceeding.

While the issue before me is not whether defendant made the alleged statement, the inconsistencies and improbabilities in the testimony of the government's witnesses bears negatively upon their credibility. By contrast, Mss. Galindez and Fernandez, who appear to be impartial observers with no connection to defendant, uniformly and credibly testified that <u>Miranda</u> warnings were *not* administered to all of the occupants, as testified to by Detective Lorenzo. <u>Id</u>., pp. 75-76.

For the first time in its reply, the government points to AUSA McCabe's e-mails, as supporting the testimony of Lieutenant Kochersberger and Detective Lorenzo that the alleged statement occurred. Government's Reply [71], pp. 6-7. This argument fails to sway me for several reasons. First, despite the government bearing the burden of proof of this motion, it did not attempt to introduce the e-mails at the hearing. Second, the e-mails do little to account for why the C.P.L. §710.30 Notice indicated that no statements were made or the government's varying explanations. Finally, ADA McCabe's e-mail, wherein she stated that defendant was "never specific as to what items he was taking responsibility for" ([39-1], p. 2 of 42 (CM/ECF)), is not entirely consistent with the second C.P.L. §710.30 Notice, which stated that defendant's statement came in response to being told that the occupants of the house would be arrested for the guns and drugs recovered (gov. ex. [61-4]), or with ADA McCabe's earlier e-mail that "defendant took ownership of *everything found* in the home". [39-1], p. 3 of 42 (CM/ECF) (emphasis added).

Viewing the record objectively, I conclude that the government has failed to demonstrate by a preponderance of the credible evidence that defendant's statement was preceded by a knowing, intelligent and voluntary waiver of his <u>Miranda</u> rights.

Recognizing that not all questions require <u>Miranda</u> warnings, the government alternatively relies on the pedigree exception to the <u>Miranda</u> requirement.  Government's Memorandum of Law [68], pp. 4-6. The pedigree exception generally covers "routine booking" questions designed to secure "biographical data necessary to complete booking or pretrial services". <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601 (1990). Such "questions . . . ordinarily innocent of any investigative purpose, do not pose the dangers <u>Miranda</u> was designed to check; they are rather the sort of questions 'normally attendant to arrest and custody'". <u>United States v. Gotchis</u>, 803 F.2d 74, 79 (2d Cir. 1986). The pedigree exception does not include "questions . . . designed to elicit incriminating admissions". <u>Muniz</u>, 496 U.S. at 602 n. 14.

The government contends that defendant's statement was prompted by him, along with the other occupants, being asked "who lived at the residence"?  Government's Post-Hearing Memorandum of Law [68], p. 5.  Even if that could be considered a pedigree question, the government's own witnesses refute that that was the question actually asked.  Instead, Detective Lorenzo testified before the grand jury that defendant's statement came in response to Lieutenant Kochersberger referring to the drugs and guns located in the residence and "ask[ing] everyone whose this is"?  [61-3], p. 15 of 17 (CM/ECF).  It also differs from the second C.P.L. §710.30 Notice (gov. ex. 4 [61-4]) and the hearing testimony of Lieutenant Kochersberger and Detective Lorenzo that defendant's statement was "spontaneously" made after he was told that "he and the others in the house would be arrested for guns and drugs".  Therefore, the government has also not established by a preponderance of the evidence that an exception to <u>Miranda</u> applies.

## CONCLUSION

For these reasons, I recommend that defendant's motion to preclude and dismiss [39] be denied, and that his motion to suppress [49] be granted. Unless otherwise ordered by

District Judge Richard J. Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by July 7, 2020.  Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: June 22, 2020

JEREMIAH J. MCCARTHY
United States Magistrate Judge